We'll call our last case for the day, Le Pape v. Lower Merion School District. Good morning. May it please the Court, I'd like to reserve four minutes for rebuttal. It's done. Nicole Ryman on behalf of the appellants. The District Court fundamentally erred when it dismissed the Le Pape's intentional discrimination claims on summary judgment, holding that under FRI, if the ADA claim must be exhausted, it loses its independent existence, and the Le Pape's lose the rights, procedures, and remedies available to them under the ADA, including a jury trial. We got it. We got your brief. We're all over this. But let's go straight to the standard of review, if we could, please. Okay. Whether it's modified de novo or de novo. It's de novo review on the ADA and the Section 504 claim. Those are independent claims from the IDEA claim. They were brought as original claims in the District Court. Okay. And what do we do with previous? We recognize that Perez came into being after lower court decision and administrative hearing and everything. And, of course, we'll want to discuss the effect Perez has on this. But what do we do with existing precedent that seems to indicate, and there's some split among the District Courts on, you know, the standard of review, perhaps ought to be modified de novo review when you've got, when a party chooses to link their ADA and their Section 504 claim with an IDEA claim and start talking about FAPE. When they decide to bring it all at once, they ought to be under de novo review and you shouldn't try to split that up. There are cases out there. Talk about that. Why are they wrong? Well, because under this court's precedent in Batchelor, we had to bring all three of those claims together. And it's quite clear under 1415L that nothing in the IDEA restricts or limits rights under these other statutes. And we have to have an independent right to pursue the procedures and remedies available under those statutes, which includes a jury trial and money damages. Well, the hearing officer here asserted authority and jurisdiction over the Rehabilitation Act claim and said, I don't think I've got jurisdiction, but I'm opining anyway on the ADA claim. So the hearing officer took on all three of these things. So is it your position that having asserted jurisdiction and opined on and taken evidence and rendered a decision on, that there's a split standard of review taking that deferential view of the IDEA but giving no deference at all to whatever was said about the Rehabilitation Act and the ADA? Correct. So under Frye, the hearing officer only had jurisdiction over the denial of faith claim. There can be times where a Section 504 claim, if it's under the Reg. 104.33A, I believe, which goes to having a cause of action under Section 504 for a denial of faith, if those claims are joined together and if, in fact, it would be redundant to then go into federal court because you're not asking for anything that the hearing officer couldn't provide, then I think that could be a separate category. But for the ADA, the hearing officer didn't have jurisdiction and any decision would be void. By the hearing officer, it would have been void. Okay. Thanks. That answers my questions about the... Of course, we'll be asking your colleague about it as well, and you'll have a chance to speak to it on rebuttal. So there's, I mean, here there's unique additional evidence that was brought into the district court that wasn't available at the time of the IDA proceedings and was unique to the ADA effective communication claim. There was Alex's testimony, which wasn't heard below the videos. Why was that, how is that unique to the ADA claim? How is that not pertinent to the faith claim, the IDA claim? Because it went to the effective communication and regulation under the ADA. It certainly does that, but why is it not relevant? You just said it was new and it was, and I thought you said it's not relevant. How is it not relevant? Well, I said it's, I mean, I use the word unique, and because it goes to the effective communication regulation, which is different, I mean, the standards, which is in our brief and also in the amicus briefs. Let me see if I can try another way, because that's a question that I have as well. He wants to effectively communicate. He believes, the family believes that he can effectively communicate better with a letter board, and you bring an IDEA claim for that, and you bring a 504 claim and an ADA claim. So what's, you make that suggestion, and isn't the, for example, 504, doesn't that deal with it in a different way? You made a suggestion, they have to consider it, do they not? Well, under 504, if it's a denial of, under the regulation for denial of faith, that's separate, but under the ADA. But it also, back to Judge Jordan's question, relates to his education, does it not? Well, because he's in school, so obviously everything in some way relates to his education, but under the ADA, they have to give primary consideration to the request of the student. The IDEA, the deference is to. Within one of the categories. Yes, the deference under the IDEA is to the school district. So, and the ADA requires communication as effective as communication with other non-disabled persons, whereas the IDEA does not have that equality idea to it. It's a free appropriate public education. I'm not stating it as well as Judge Jordan, but if it starts off that this is what he needs for his education, doesn't everything kind of take off from that, map onto that? No, because you have a stand, I mean, this is what the Supreme Court said in press, there's a stand-alone claim, even if it comes from a denial of faith, there's a separate stand-alone claim, and that's entitled to a jury trial and the discovery, which we had in federal court, which we don't get in an IDEA proceeding. So, you do this area quite often, do you not? Yes. So, somebody, let's say they come to you, and the family says, we've got a problem here, and you say to them, you have certain options, and do you pick all three options, the IDEA, 504, and the ADA, or do you say one's better than the other, or how do you go about advising them in terms of what their options are and which ones they should pursue? Speaking in the abstract and not revealing any attorney-client privileges. Yeah, exactly, exactly. I completely agree. So, before Perez and under Batchelor, every case, every complaint that we filed with the Office of Dispute Resolution brought all three claims, because it seemed that certainly a reasonable reading of Batchelor was that you had to bring all those claims before the hearing officer first. Now, after Perez, I think that I would not, for the most part, bring an ADA claim in particular, unless there was either an issue with effective communication, or it was a service dog claim, or another claim that has a clear set of regulations that apply to it under the ADA. We would still bring a Section 504 claim because of 104.33A, which maps on the FAPE requirement onto the Rehabilitation Act. Can I ask you a question, please, about what the district court did here in her second opinion? And I'm looking at Appendix page 64, and this is where she's talking about the ADA claim. I'll give you a minute to find that. It's page 42 of the slip opinion. And you and Amiki are obviously troubled by the district court's rejection of expert testimony that was proffered. But this maybe gets us back to the standard of review to some degree. There was fact-finding at an administrative hearing. There was evidence presented at the administrative hearing. The court looks at that administrative record, and without saying as much as, like I'm deferring here, the district court permitted Alex to use the S2C as a reasonable accommodation under the ADA. That they did that does not change the analysis. The analysis being that the district wasn't required, in the court's words, to implement a communication that has not been shown to be effective. That's the analysis that the court's referring to. The district court made this change about a month after Alex had stopped attending school. They did not want him to be home because they felt him being home was detrimental to him, etc. And so this, as the court puts it, they offered this accommodation as a concession. But the court doesn't view it as anything more than that. So there's a whole bunch mixed in here. What I'd like you to respond to is how should the district court have approached the fact-finding that went on at the administrative hearing, which included facts that were pertinent to both the ADA claim and to the IDEA claim. How should the court have... You clearly feel like she mishandled it. What was the court to do when there's the same evidence about whether this S2C method is effective or not, going to both sets, and yet the court has to deal with that fact-finding? I've articulated that badly, and I apologize, Ms. Reim. Do you understand what I'm trying to ask you for? Well, I think that on the ADA claim that we were entitled to have a jury decide that. And the district certainly could make that argument to the jury that they're saying that they were going to let Alex come to school with a letter-boarding communication partner as a reasonable accommodation under ADA. They can argue that they were just going to do that as a concession. But the district court citation there is literally to the argument, to the oral argument of counsel. It's not... That's not a... There wasn't a fact presented there that no one testified from the district that it was a concession. Well, no one testified that it was a concession, but they did testify that they didn't believe that this was Alex's true voice. That was the whole point, right? I mean, that was the entire argument that the district court was making is, you know... I mean, I'm not putting words in people's mouths, but it's, we don't believe you're an expert. And we're not attributing malintent to Alex or his parents or the aide or anybody else. We just are concerned that, you know, when he takes the history test and his answers start getting better, it's because he's getting help, even if it's marginal or unintentional hints. We're worried about that, and we're entitled to be worried about it. Now, there's some fact-finding that goes on associated with that, right? Right. Well, but the... Yes, but again, it's under the ADA. It's not... The standard is different than the IDEA. So if the district did not believe that this was effective communication for Alex, in other words, that it was a fundamental alteration of the programming, they had an obligation to tell that to the parents and put that in writing, or if they thought it was going to be an undue burden. That's what the ADA requires. The IDEA doesn't require that. Okay, so getting to the question I was attempting so poorly to ask, it's your client's position that there was at least a material issue of fact. It should have beat summary judgment if the court had applied summary judgment standards as would typically be the case, and that this should have gotten to a jury on the ADA piece at least. Have I understood you correctly? Correct, and when you look at the district court summary judgment decision, from pages 4 to 9 is all the evidence that gets us to a jury, and footnote 3 is all the evidence from all the professionals on the effect that this is effective communication for Alex. And the district court puts all that aside because it decides that our ADA claim does not have an independent existence. First the district court decides that we have to exhaust under FRI, but then it makes the leap to say having exhausted your ADA claim loses its independent existence, and that is incorrect. Okay, thank you. Thank you. Thank you, Ms. Ryan. We'll have you back on rebuttal, and we'll hear from counsel for the Appley School District. May it please the court. My name is Mike Christofko. I'm here arguing on behalf of the Appley Lower Merion School District.  The standard of review is modified de novo. How does that fit with having a jury trial right? With the ADA or RFI? How can it be modified de novo if you've got a right to a jury trial? Because it's modified de novo on the appeal of the due process hearing. The district court looks at the appeal. That goes to the IDEA claim, right? Well, not just the IDEA claim. In this case, the due process hearing was the plaintiff chose to bring IDEA, ADA, and Section 504. They did. Now, at the end of the hearing, they argued to the hearing officer, you don't have jurisdiction to decide the ADA claim, so he did. So he put that in the opinion. They never made that argument as to the 504 claim. Assume for the sake of discussion that that was forfeited, but just assume that. Please answer the question Judge Bevis has put to you, which is how could a modified de novo standard of review possibly be consistent with a right to a jury trial? Speaking generally, when you've got a right to a jury trial under 504, you've got a right to a jury trial under the ADA. How can those two things be happening at the same time in the same space? Because this particular ADA claim that was brought is identical to the IDEA claim. The plaintiffs have repeatedly stated, well, the effective communication regulations under the ADA are different than what's under the IDEA. They want damages, so they're not the same. There has to be a jury trial right, correct, with the damages request? The plaintiffs can't fully litigate a claim, lose the claim, and turn around and say, now I'm going to request a different form of relief. Hold on. When you say they can't fully litigate a claim, that's putting a rabbit in the hat. That's the point we're trying to ask you about. Right. How can they fully litigate a claim to which they're entitled to a jury in front of a hearing officer? Isn't that the whole point of Perez and of 14, what is it, 1451 L? 1415 L. 1451 L. Nothing that we say here in the IDEA is supposed to mess up your rights under the RA or the ADA. Well, they stand independent. That's what Congress says. The U.S. Supreme Court just last year in Perez seems to be saying pretty emphatically, hey, these rights are independent. They're independent statutory rights. We got spanked in Smith. We're not getting spanked again. So here you go. These are independent rights. If that's the message that Congress is sending and that's the message the Supreme Court is sending, how can it be the case that they fully litigated their right to damages in front of an administrative officer who's got no power to give them damages even if he wanted to? Let me first address Perez and then 1415. Perez, the holding in Perez, was that the claim did not require administrative exhaustion. That was the holding. The holding didn't deal with what happens to the claim once it's in the district court. It just said that you're not barred by exhaustion. Did Perez or did Perez not emphasize that the ADA claim is an independent right? It emphasized that under the Section 1415 that unless you're seeking remedies that are also available under the IDEA, then the other statutory claims that you could bring do not need to be exhausted. That was the holding in Perez. What's the implication of that, Mr. Christofko? Well, the implication is that if you were a plaintiff and you were seeking to bring a claim under the IDEA and you want to include as part of that claim claims under other statutes to have those matters adjudicated in front of a hearing officer, the potential exists that you're going to give up your right to later relitigate that exact same claim down the road. So your argument for the standard of review depends upon the premise that somebody can fully litigate an ADA claim for damages in front of an administrative hearing officer. My argument for the modified de novo standard of review is based on the Supreme Court case decision in Rowley that said that modified standard of review. That's what IDEA. Yeah, Rowley predates. And that's IDEA, right? Well, Rowley was an IDEA case, and it did indicate that that is the standard of review, but the IDEA requires these other cases to be brought. I know this is not meant to be rude, but it's not an ordinary conversation. It's a stylized conversation. And for better or worse, we get to ask questions, and we get to ask them when they occur to us. So for purposes of the record, it will help if you let us ask the question. So Rowley predates 1415L, doesn't it? Rowley decision does, correct, yes. Okay. So Congress has said very emphatically, don't be confused. Nothing we're saying here in the IDEA context is supposed to take away any rights that people have under the Rehabilitation Act or the American with Disabilities Act. Does that affect? Well, it talks only to exhaustion, but his question is different. Okay, yeah. Doesn't that undercut your assertion that if you bring these cases in the same lawsuit, it's going to go to an administrative hearing, you chose to put them together in one suit, and you are therefore going to end up with an administrative hearing officer who has no right to give you damages being able to bind a district court and later appellate courts with decisions that are outside his or her purview? It does not, and I can explain why. Okay. 1415L says nothing in this chapter shall be construed to limit the rights. The chapter being the statute, the IDEA. Modified de novo standard of review, which existed at the time that this language was put into place, is not in the IDEA statute. It's a Supreme Court-created jurisprudence doctrine that the Supreme Court established into how to review these cases. So Congress knew that the Supreme Court had said this is how we review these cases, and it put into 1415. But the Supreme Court has only ruled in Raleigh on the IDEA. We don't have the Supreme Court ruling on either 504 or the ADA, do we? Well, the Supreme Court has not ruled on whether modified de novo should extend to these other statutes explicitly. That's why we were asking you about the logic of both Frey and Perez. Correct. Both of which seem to indicate post-1415L that you need to attend to these as separate and independent statutory rights. Well, Perez, as I indicated, is a case that merely just says, you know, you're not barred by exhaustion. Frey says, if you have... Merely is a big word there. Well, but that's the holding. That's what the holding was limited to. It didn't go beyond that. But Frey indicates that the ADA, 504, and IDEA are independent inquiries. We know that IDEA gets modified de novo review. Well, how... Why do the others? Isn't it really the usual summary judgment standard for an ADA claim? It's not. When the claim is brought through the administrative process and it's adjudicated at the administrative level and it comes up to the district court on appeal from the administrative hearing officer, the district court applies a modified de novo standard review to everything the hearing officer... What was the district court doing here? What was going on? I'm going to make you mind reader here, Mr. Christofko. What could possibly have been the use of saying, I'm taking the ADA claim out. I'm going to allow discovery on it. We're going to have a summary judgment. We're going to have Daubert. We're going to have pretrial. We're going to have a trial. Was that just all smoke and mirrors and pretend? What's the use of any of that? If what's really happening is it's all getting decided in the administrative hearing and there's really nothing that's going to happen after that that's meaningful, because what's meaningful is what happens in that administrative hearing room. The reason why the claims were split is because in the amended complaint, the plaintiffs alleged that their ADA claim was different from the IDEA claim. Right, and they prosecuted a claim for damages. But it turned out. The ADA is saying we're being discriminated against and we're not getting the benefit of the at least equal communication opportunity. Right, and the district court split it out. And that's why we're spending a lot of time on the standard of review because it's hard to understand, and it might just be I'm being obtuse, but I don't understand what the district court's purpose was and all that administrative work to set up a whole other track to put something online for trial, if at the end of the day what the district court was going to have to do, and in fact apparently did do here, was just to say, you know what? You lost in the administrative hearing, so you're done. Well, after discovery, it was determined that there was no difference between the ADA claim and the IDEA claim. The district court specifically went through that in the opinion and said every single request to use this spelling to communicate system came as a request to modify the IEP of the student. Every single request. Doesn't the court have a responsibility to treat the ADA claim as an independent claim? Because it feels like what we're zeroing in on here and what we're coming to a point on is, you're saying the district court understood this and treated it as effectively subsumed in the IDEA claim. There was nothing independent to that ADA claim. Even though there was a claim for damages, there was nothing. If you were like doing a Venn diagram, the ADA claim, fully in the IDEA circle. And since that's the case, it was right for the district court to treat this as fully litigated at the administrative hearing. Have I understood you correctly? The district court did determine that the ADA claim was identical to the IDEA claim and that's why it was not a separate claim. As a matter of law. On the summary judgment record that was presented, based upon everything that the parents produced, all of the documents, the deposition testimony. You say summary judgment record, but is there anywhere else in which for summary judgment purposes, we apply a differential standard rather than a de novo standard in asking, you know, is there any genuine issue of material fact here? Is the only place in the law we do that for summary judgment? There's not been any argument that the district court applied the wrong standard on the summary judgment motion. The argument being raised by the… I take their argument, maybe I'm giving them too much credit. I take their argument to be, we had a standalone ADA claim. We have a material issue of fact. That sounds like Rule 56 to me. We're entitled to get to a jury to get that fact issue resolved and to get damages if a jury agrees with us. That sounds like an argument to me, so you should meet it and not say they never made it. Well, for the modified de novo standard review, that argument was strictly limited to the district court's affirming of the due process hearing officer's decision. That the district court erred in affirming the Section 504 parts and the ADA part using the modified de novo standard. With respect to the summary judgment standard, in this case, the plaintiffs did not come forward with evidence to establish that they did have a separate independent claim. The claim was completely the same as the claim that was presented on the IDA and the claim that was litigated. Is your assertion that because this happened in the context of the school, it was necessarily all the same as the IDA claim? That because the communication was in a classroom setting, it was necessarily the same as an IDA claim? The assertion is that every single request to incorporate spelling to communicate into the school setting for this student was made as a request to modify the IEP. That is why it's the exact same claim. If they had said to the school, look, Alex needs to use this board. We want this board to be used and the aid to be able to help. And if they just said that and they hadn't said, as you assert they do, and this is all meant to get you to change the IEP, if they just said, let him use the board, that would have been different? This case would be different? He did have a letter board with him at all times. And he did have a one-to-one aid that we provided. You understand. I think, Lael, let's not dance around. I hope you understand what I'm getting at. Is there something about this that would be different if they had just said, you know what, just let him use the board with an aid, period? If they came in and said, we need to use this spelling to communicate methodology, not to access any of his educational programming, but to do something else in connection with the school so that he can eat in the cafeteria, he needs to be able to use this. Talk to his friends so he can cheer at the football game. If he had said that, that would be different. But it's the fact that he's at one and the same time wanting this, and maybe primarily because it's so important, educational advantage. It's the educational advantage and the emphasis on educational advantage that, in your view, and in the district court's view, as you interpret it, makes this just nothing but an IDEA claim wearing an ADA dress. It's exactly the same as the IDEA claim, dressed up as an ADA. What happened to the district court when the complaint was filed? Why did the district court ultimately proceed on two tracks? Well, ultimately, the district court proceeded on two tracks because the plaintiff filed an amended complaint alleging that the claim was different. And so because it was on a motion-to-dismiss stage and that was the allegation, it was, okay, let's give the plaintiff time to prove this. We'll have discovery. You can put forth what it is. And then ultimately, after discovery, it wasn't there. It was still the exact same thing as the IDEA claim. Okay. Thank you very much, Mr. Christofo. Thank you. We'll hear from Ms. Ryman. I'd like to start first with there were requests for Alex to use the letter board across the entire school day. There was a request in particular for him to be able to use the letter board during fellowship club. There was a request for him to be able to use the letter board on a Saturday diversity-type event. And does that really make a difference? Are you conceding the point that if Alex's request had been, I really want to use this in class, this is important to my learning, if that's all that Alex had said, do you concede that the ADA claim would be effectively the same as the IDEA claim and that the district court, therefore, was entitled to deal with it as she did? No, because under the ADA claim, most basically we're entitled to money damages. When you look at, I mean, Frye, and it's cited in our brief, the only, suppose a parent's complaint protests of a school's failure to provide some accommodation for a child with a disability. If it's an accommodation that goes to IDEA FAPE, the hearing officer can award that. If it's not, they can't. And, I mean, Frye says this child would have to go away empty-handed. So the ADA claim, just for the fact it seeks monetary damages, has to go forward. And it's clearly the de novo summary judgment standard. And in the summary judgment opinion, the district court lays out chapter and verse, all the ways in which Alex's education and his access to school was affected at pages four to nine. And there is more than enough evidence that the communication was effective and that the school district's conduct was deliberate. That all sounds like it relates to a FAPE, does it not? But you can have, in Perez and then in Lartique, both of those were claims that were underlying, the underlying piece of it was for denial of FAPE. And there's still a right to go forward with the ADA claim. Okay. Okay. We thank counsel for the argument today. We've got the matter under advisement. This is a case where we'd like to have a transcript too. We'll ask the parties to get together on that and provide it to us. We'll go ahead and recess court.